| | | |
|---|---|---|
| KENNETH C. MILLER and SECLUDED ACRES, LLC, | § § § | |
| Plaintiffs, | § § | |
| vs. | § § | |
| | § | CIVIL ACTION NO. _____ |
| | § § § | |
| THE CITY OF EAST MOUNTAIN, TEXAS, and NEAL COULTER, Individually, | § § § § | |
| Defendants. | § § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Kenneth C. Miller and Secluded Acres, LLC, Plaintiffs in the above-captioned cause, make and file this Plaintiffs' Original Complaint complaining of and against Defendants the City of East Mountain, Texas, and Neal Coulter, Individually.   In support, Plaintiffs show as follows:

### A.   PARTIES

1.      Plaintiff Kenneth C. Miller is an individual who resides in Gregg County, Texas.

2.      Plaintiff Secluded Acres, LLC, is a domestic limited liability company.   Its principal place of business is 5421 State Highway 300, Longview, Texas 75604.

3.      Defendant the City of East Mountain, Texas, is located in Gregg and Upshur Counties, Texas.   It may be served with process by serving the City Mayor, who is Neal Coulter, at 103 Municipal Dr., Gilmer, Texas 75645.   *See* Fed. R. Civ. P. 4(j)(2).

4.      Defendant Neal Coulter is an individual who resides in Texas.   He may be served

with process at the City of East Mountain, 103 Municipal Dr., Gilmer, Texas 75645. He may also be served at his place of residence, which is 348 Coulter Road, Gilmer, Texas 75645. *See* Fed. R. Civ. P. 4(e).

## B. JURISDICTION & VENUE

5.      The Court has jurisdiction over the lawsuit because the action arises under federal law. The Court's jurisdiction is invoked under 28 U.S.C. § 1343(a)(3). Plaintiffs sue under Title VIII of the Civil Rights Act of 1968, also known as the Fair Housing Act; under 42 U.S.C. § 1982; under 42 U.S.C. § 1981; and under the Equal Protection Clause of the U.S. Constitution through 42 U.S.C. § 1983. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiffs' claims against Neal Coulter, individually, because Plaintiffs' claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution. Venue is proper in this district because a substantial part of the events or omissions giving rise to this claim occurred in this district. The unlawful discrimination and retaliation complained about in this lawsuit occurred in this district. *See* 28 U.S.C. § 1391.

## C. FACTS

6.      In February 2013, Kenneth C. Miller asked the City of East Mountain, Texas, for water service to his property, part of which is located along Coulter Road in Gregg County, Texas. This was his third request for a water meter. Miller's property is adjacent to property owned by Neal Coulter, who is the Mayor of the City of East Mountain. Miller wanted a water meter within the East Mountain Water System. East Mountain holds the Certificate of Convenience and Necessity ("CCN").

7.     Miller initially applied for a water meter to receive drinking water from the City. In addition, Miller through his company Secluded Acres, LLC, signed a contract with a construction company.   The contract provided that Secluded Acres, LLC d/b/a Secluded Acres RV Park would provide hookups for recreational vehicles on Miller's property.   The RVs were to house the construction company's laborers and serve as a temporary work camp.   Most of the workers are Hispanic or Latinos.   To serve the water needs of the RVs, Miller needed a master water meter from the City.   He would have paid the City whatever money it required for a master meter, but the City council initially refused to speak with Miller despite the fact that he appeared at a council meeting and asked the council for water.

8.     The City denied Miller's request for water.   There was no legal basis for the denial.

9.     The City gave pre-textual excuses for denying Miller's request for a meter.   A considerable time after denying him a meter, the City claimed that it was not sure if the meter was within the CCN.   Based on the City's maps, however, Miller's land is clearly within the City's CCN.   The City also said that City ordinances would not permit one meter to serve multiple RVs. Miller's land is outside of the City limits, so the City's ordinances do not apply to the RV Park. Miller made a proper request for a water meter, so the City was required to grant the request.   The real reason that the City of East Mountain denied Miller's application for water was due to the race, nationality, or ethnicity of the laborers who would live in the temporary work camp.

10.     During one City council meeting in 2013, a council member or alderman stated publicly that that there were those within the City who have issues with the traffic and people who would live in the work camp.   The council member stated that there was a problem with "caliber of people" and their "ethnicity," "ethics," "background," and "nationality."   The council member

stated such a camp "conjures up" drinking and people cussing. The council member expressed concern for the kids and young girls who might be exposed to such a work camp filled with migrant workers. The council member asked Miller if the entrance to the camp could be moved away from the Mayor's home and surrounded by a privacy fence. The council member would not want such a camp near the council member's home. Upon information and belief, the City's mayor and council members made similar derogatory statements about the race, ethnicity, background, or nationality of Plaintiffs' tenants.

11. Miller complained to the Texas Commission on Environmental Quality ("TCEQ"). The TCEQ has jurisdiction over the water dispute and the City's CCN. The TCEQ intervened on behalf of Miller and directed the City to provide him with water service. Commission staff said that his RV Park qualifies to be served by a single master meter. The TCEQ wrote the City a letter stating that "[i]f the City of East Mountain receives a request for water service for a RV park, TCEQ would expect the RV park to be served by a master meter . . . ." Under the threat of administrative penalties or possible revocation of the City's CCN, the City was forced to provide Miller with a meter. By that time, however, Miller was forced to seek an alternative water source at his own expense, which was considerable. He was required to install a pump at an existing well that was dug by an oil company on his property. The pump requires a generator for power. Miller had to buy filters and install over 1000 feet of line to deliver the water from the well. None of this would have been necessary if the City would have given Miller a water meter as he requested. The City and Mayor Coulter unreasonably delayed giving Miller water service. Even after the TCEQ forced the City to supply water, Mayor Coulter tried to have the City pay for a survey of the CCN and put it as an agenda item to further delay Miller from getting a water meter.

Mayor Coulter used his power as the mayor to circumvent normal procedure and how water service is established. The mayor of East Mountain does not control water decisions within the City's CCN, or at least the mayor has not in the past.

12. The harassment by the City intensified after the TCEQ forced the City to give Miller a meter. The City and Neal Coulter continued to harass and intimidate Miller, his clients, his ranch hands, and the residents of the RV Park.

13. Coulter was photographed trespassing on Miller's land. When Miller filed a criminal complaint, Coulter retaliated by filing a frivolous trespass violation against Miller. Miller did not trespass on Coulter's land. Within days of Miller's trespass complaint, one of Miller's cows was shot in the hindquarters with a shotgun. Plaintiffs contend that Coulter is responsible for the shooting.

14. Coulter has placed a sign across the road from Miller's land and near the entrance to the RV Park. The sign depicts rifle crosshairs. The crosshairs are aimed at Miller's land and is adjacent to the RV Park entrance. It serves as a terrifying warning to Miller and to anyone entering or leaving Miller's property and RV rental property. Miller sought assistance from the Gregg County Sheriff's Department because part of Miller's land is also located in Gregg County. Miller understands that Gregg County twice caused the sign to be removed from the County's property and right-of-way. Coulter interfered with the workers who removed the sign. Coulter then demanded the sign back from Gregg County, and he hung the sign up again just outside the County's right-of-way. As of the filing of this lawsuit, the sign is still hanging. Miller constantly worries that he or someone on his property will be shot or harmed by Mayor Coulter.

15. The City's police department has joined in the harassment of Miller. The Police

Chief of East Mountain requested that a Gregg County Sheriff's Deputy speak with Miller's Hispanic client, which created fear. Miller was recently stopped on FM 726 outside of City limits by an East Mountain police officer. At the time of the stop, Miller had a Hispanic ranch hand in his vehicle. The ranch hand was merely a passenger. The officer questioned the ranch hand about his identity and demanded that he produce a driver's license or identification card. The officer had no probable cause to question Miller's passenger, and the ranch hand was intimidated.

16. Upon information and belief, Mayor Coulter has also used a City phone to contact Miller's neighbors about Miller's use of his land. Neal Coulter has unsuccessfully tried to use his position as Mayor of East Mountain to take control of Coulter Road from the county and close the roadway to all traffic. One council member stated at a City council meeting that even if Miller was allowed water service, the City controls ingress and egress on all public roads inside City limits, so Miller and his tenants could not access Miller's property. Another council member erroneously claimed that the City's prohibition against travel trailers extends everywhere within the CCN. This is untrue. The City's ordinances do not apply to the work camp on Miller's land.

17. The City and Coulter have targeted Miller, his ranch hands, his clients, and the residents of his RV Park. The collective actions of the City and Coulter have had a chilling effect on Miller and his business. Plaintiffs have lost business due to the unlawful discrimination and retaliation. Miller was forced to secure his own water at great expense because of the City's four-month delay in giving him a water meter. He has lost the contract for the temporary work camp and the money needed to secure his water from an alternate source. The loss of money negatively impacted Miller and all of his businesses. Miller also lives in constant fear of what Coulter and the City might do to him, his hands, or anyone wanting to drive down Coulter Road to enter his

property.

### D.   COUNT ONE-VIOLATION OF THE FAIR HOUSING ACT

18.     Paragraphs 1-17 are adopted herein by reference as if set out in full.

19.     Plaintiffs sue Defendants for violating Title VIII of the Civil Rights Act of 1968, as amended, which is also known at the Fair Housing Act. Defendants have discriminated against Plaintiffs concerning the terms, conditions, or privileges of the rental of real property. Defendants have coerced, threated, intimidated, or interfered with Plaintiffs' enjoyment or exercise of housing rights based on discriminatory reasons. Defendants have retaliated against Plaintiffs, who have sought to aid or encourage the exercise or enjoyment of fair housing rights to Hispanics or Latinos.

### E.   COUNT TWO-VIOLATION OF SECTION 1982

20.     Paragraphs 1-17 are adopted herein by reference as if set out in full.

21.     Plaintiffs sue Defendants for violating 42 U.S.C. § 1982, which is part of the Civil Rights Act of 1866. Section 1982 protects citizens against discrimination based not only on racial characteristics but also on ethnic characteristics and ancestry. Section 1982 protects the right of all citizens to hold real and personal property. Under section 1982, "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property." 42 U.S.C. § 1982. Defendants violated section 1982 by discriminating and retaliating against Plaintiffs because they seek to rent to persons who are of different ethnicities, backgrounds, or nationalities than the council members of the City of East Mountain.

### F.   COUNT THREE-VIOLAITON OF SECTION 1981

22.     Paragraphs 1-17 are adopted herein by reference as if set out in full.

23.     Plaintiffs sue Defendants for violating 42 U.S.C. § 1981, which is another part of the Civil Rights Act of 1866.   Section 1981 prohibits discrimination based on race in the making of contracts and grants to all people the same rights as "white citizens" to make and enforce contracts.   Defendants violated section 1981 by refusing to grant Plaintiffs the same privileges and rights as other property owners within the City's CCN.   The City unlawfully discriminated and retaliated against Plaintiffs because they sought to rent to persons who are of different ethnicities, backgrounds, or nationalities than the council members of the City of East Mountain. Plaintiffs sought to rent real property to members of a racial minority.   Defendants had intent to discriminate on the basis of race.   The discrimination concerned one or more of the activities enumerated in the section 1981, such as the making and enforcing of a contract.

## G.   COUNT FOUR-VIOLATION OF THE EQUAL PROTECTION CLAUSE

24.     Paragraphs 1-17 are adopted herein by reference as if set out in full.

25.     Plaintiffs sue Defendants for violating the Equal Protection Clause of the U.S. Constitution through 42 U.S.C. § 1983.   Defendants intentionally discriminated against them based on the race, nationality, background, or ethnicity of Plaintiffs' renters.   At all relevant times, Defendants acted "under color" of state law, and intentionally deprived Plaintiffs of their rights under the Constitution of the United States.   Under the Fourteenth Amendment, the government cannot deny to any person within its jurisdiction the equal protection of the laws.   Defendants violated section 1983 by refusing to grant Plaintiffs the same legal privileges and rights as other property owners.   Defendants are motivated by bigotry and have impermissibly created suspect classifications based upon ethnicity, racial background, or nationality.   The City has an illegal custom or practice of discriminating against persons based upon race, ethnicity, or nationality.

The moving force behind the Fourteenth Amendment violations in this case was the City's custom or practice.

26.     Coulter is liable in his individual capacity and is not entitled to qualified immunity. The right to be free from illegal discrimination and retaliation is a clearly established constitutional right.   Under the facts of this case, it would have been clear to a reasonable elected official that Coulter's conduct was unlawful.

### H.   COUNT FIVE-TRESPASS

27.     Paragraphs 1-17 are adopted herein by reference as if set out in full.

28.     Miller sues Coulter for trespass.   Miller owns real property.   Coulter entered Miller's land, and the entry was physical, intentional, and voluntary.   Coulter's trespass caused injury to Plaintiff's right of possession.

### I.   DAMAGES

29.     As a result of the foregoing conduct, Plaintiffs suffered injuries and damages. Plaintiffs lost income from a contract to provide a temporary work camp.   Plaintiffs suffered business interruption due to Defendants' illegal discrimination, harassment, and retaliation. Defendants have harassed and intimidated Plaintiffs' clients and renters.   This has resulted in a loss of rental income when renters left for other housing.   Miller incurred the cost of securing water from an alternative source due to the City's delay in granting his request for a meter.   Miller seeks to recover this cost from Defendants.   Miller also incurred expense for the veterinary care and treatment of his shot cow.   He has further suffered from severe mental anguish, both past and future.

30.     Plaintiffs are entitled to seek and recover the following damages:   (a) loss of past

rental income; (b) loss of future rental income; (c) compensatory damages, including damages for mental anguish and inconvenience; and (d) medical expenses that Miller incurred in seeking mental health counseling, both in the past and in the future

31.     Plaintiffs further request the issuance of a temporary or permanent injunction, or temporary restraining order, or other order, as the Court deems appropriate to prevent Defendants from engaging in or continuing to engage in an unlawful practice.   Defendants should be forced to cease and desist its unlawful discrimination and retaliation.   Defendant should also be ordered to implement and post policies consistent with the Fair Housing Act, or be ordered to provide and attend discrimination prevention training at Defendants' own expense.

32.     As to Plaintiffs' claims against Coulter, Plaintiffs are entitled to recover punitive and/or exemplary damages because he acted intentionally, recklessly, and/or maliciously.

33.     It was necessary for Plaintiffs to hire the undersigned attorney to file this lawsuit. Upon judgment, Plaintiffs are entitled to an award of attorney's fees and cost under 42 U.S.C. § 1988(b).

34.     Plaintiffs also seek pre and post-judgment interest at the maximum rate allowed by law.

## J.  **PRAYER**

35.     For the reasons stated, Plaintiffs seek judgment against all Defendants, jointly and severally, for the following:

a.      All actual damages sustained by Plaintiffs;

b.      Injunctive relief;

c.      All punitive damages assessed against Defendant Neal Coulter;

d.	Prejudgment and post-judgment interest;

e.	Costs of suit and attorney's fees; and

f.	All other relief the court deems appropriate, at law or in equity.


Respectfully submitted,



   */s/ Gregory S. Porter*
Gregory S. Porter
SBN:  24002785
**PORTER LAW FIRM, P.C.**
5380 Old Bullard Rd., Ste. 600-367
Tyler, Texas   75703
(903) 561-5144
(903) 705-6253 Fax
E-Mail:   greg@gregporterlaw.com

**ATTORNEY FOR PLAINTIFF**